UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Samantha Pipkin Jones, | ) | Civil Action  No. 5:15-4748-RBH-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and

Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff

brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision

of the Commissioner of Social Security ("Commissioner") denying her claim for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")  pursuant to the Social

Security Act ("the Act"). The issues before the court are whether the decision is supported by

substantial evidence, and whether the Commissioner's decision contains an error of law. For the

reasons that follow, the undersigned recommends that the Commissioner's decision be reversed

and remanded for further proceedings.

I.       Relevant Background

         A.  Procedural History

         On October 25, 2012,[1] Plaintiff applied for DIB and SSI alleging a disability onset date

of May 15, 2011. Tr. 252-59. Her applications were denied initially, Tr. 144-46, and upon

reconsideration, Tr. 178-79. Plaintiff requested a hearing by an Administrative Law Judge

_____

[1] Although Plaintiff's Application Summary is dated November 28, 2012, Plaintiff's Disability
Determination and Transmittal and her Disability Report indicate a protective filing date of
October 25, 2012. Tr. 144, 146, 290.

("ALJ"), Tr. 200-03, and Plaintiff appeared with her counsel at a hearing on July 9, 2014, Tr. 89-119. The ALJ issued a decision on September 12, 2014, finding Plaintiff was not disabled. Tr. 77-88. Plaintiff sought review by the Appeals Council. Tr. 75-76. The Appeals Council denied the request for review, thereby making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review. Tr. 1-5. In its Order the Appeals Council noted that it received additional evidence, which it made part of the record. Tr. 5. That evidence included medical records from Pascale Mardikian, M.D. dated August 6, 2014 through October 15, 2014 (Ex. 37F); medical records from Lowcountry Orthopaedics dated August 12, 2014 (Ex. 38F); and medical records from Lowcountry Orthopaedics dated January 4, 2014 (Ex. 39F). *Id.* However, the Appeals Council noted that the following records were about a later time and, therefore, did not affect the ALJ's decision about whether she was disabled on or before September 12, 2014:

> Medical records from Roper St. Francis HealthCare, dated October 12, 2014 (7 pages); medical records from Trident Health, dated November 4, 2014 (1 page); medical records from Trident Medical Center dated November 10, 2014 through November 12, 2014 (22 pages); medical records from Moncks Corner Medical Center dated February 9, 2015 through February 25, 2015 (11 pages); medical records from Lowcountry Orthopaedics dated May 20, 2015 (5 pages); medical records from Palmetto Primary Care Physicians dated July 27, 2015 through July 29, 2015 (6 pages); and South Carolina Department of Motor Vehicle – disabled placard application dated June 8, 2015 (3 pages).

Tr. 2. Plaintiff was instructed to apply again if she wanted the Appeals Council to consider whether she was disabled after September 12, 2014. *Id.* Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on November 25, 2015. ECF No. 1.

### B. Plaintiff's Background

Plaintiff was born in January of 1976, and was 35 years old as of her alleged onset date of May 15, 2011. Tr. 289. Plaintiff completed two years of college and obtained her nursing

assistant license in 2010. Tr. 294. Plaintiff's past relevant work ("PRW") included school bus driver and substitute teacher/teacher-nurse assistant. *Id.* Plaintiff indicated she stopped working on May 15, 2011, due to her medical conditions of degenerative disc disease, arthritis, bulging disc in neck, and bone spurs. Tr. 293. In a Disability Report – Appeal dated May 28, 2013, Plaintiff indicated a change in her condition and described "numbness in arms and legs weakness in right side." Tr. 323. In a second Disability Report – Appeal dated September 11, 2013, Plaintiff added another change to her condition of "pinched nerve in neck right side weakness." Tr. 341.

### C.  The Administrative Hearing

#### 1.  Plaintiff's Testimony

Plaintiff and her counsel appeared at her administrative hearing on July 9, 2014, along with a lay person witness and a Vocational Expert ("VE"). Tr. 89-119. In response to questions from the ALJ, Plaintiff testified that she was 38 years old, and she completed school through the 10th grade and then got her diploma online. Tr. 94-95. Plaintiff reported that she completed some college and obtained her license to become a nursing assistant. Tr. 95. Plaintiff testified she last worked as a nursing assistant for Orangeburg County School District and stopped working on May 15, 2011. Tr. 95-96. The ALJ noted that Plaintiff had some reported earnings in 2012, but Plaintiff testified that she did not work in 2012 although she received her retirement in a lump sum payment. Tr. 96. When asked why she stopped working Plaintiff testified that she "suffered a breakdown." *Id.* Plaintiff stated that her husband was working on the road but her "back wouldn't let [her] work anymore. So he moved [her] back home and got a job at home." *Id.* Plaintiff testified that at that time she was unable to take care of herself and the children. *Id.* Plaintiff stated that in her last year of work she "missed probably 30 days out of the school year with [her] back being out, unable to walk." *Id.* Plaintiff testified that she has four teenaged

children and lives with them and her husband. Tr. 97. Plaintiff stated that her sister and mother live beside her, and either her sister or her children will cook and her mother will stay with Plaintiff while the children are in school. *Id.* Plaintiff testified regarding her PRW noting that she was a school bus driver for ten years and was a substitute teacher for "[a]bout a year" before she obtained her nurse's assistant license. Tr. 97-98. When asked what prevents her from working Plaintiff testified: "My neck, my back, I feel like my mind is not stable. I'd forget what I was supposed to do. I'd forget to write down . . . my charting. I can't even take my own medicine now because I don't remember what I take." Tr. 98.

In response to questions from her counsel Plaintiff stated she has issues with her back and she hurt her back when she was 18 years old. Tr. 98-99. Noting that she finished high school, went to nursing school, and worked as a substitute teacher, counsel asked how her back has been affecting her in the last three years. Tr. 99. Plaintiff stated that it has affected her to the point she is unable to drive or take a bath. *Id.* Plaintiff stated that she has to take showers and she had to "have a handicap commode installed." *Id.* Plaintiff testified that she does not want to go anywhere because she is afraid she will fall and she feels like she is a burden. *Id.* Plaintiff described her pain as "[n]ever ending, burning, stabbing, there's just no relief." *Id.* Plaintiff described her pain medication as a "band aid on it" but that the pain "never really goes away." *Id.* Plaintiff confirmed her attorney's statement that she has degenerative disk disease, herniation in her lumbar spine, and issues with her neck, adding that she has "onset of scoliosis and protruding disks." *Id.* Plaintiff stated that she was scheduled for a nerve conduction study and the physician she has been seeing for the past year or two—Dr. Christopher Merrell[2] of Low Country Orthopaedics—is discussing setting her up with a surgeon. Tr. 100. Counsel noted that

---

[2] The doctor's name is misspelled in the hearing transcript as "Merryl." However, medical records indicate the proper spelling is "Merrell." *See* Tr. 726.

Plaintiff was wearing a brace on her right wrist, and Plaintiff stated that she has been diagnosed with carpal tunnel. *Id.* Plaintiff testified that her wrist will "go numb, and it wakes [her] up when [she's] sleeping, or trying to sleep." *Id.* Plaintiff stated that the disks in her neck affect her wrist and she is unable to grip a cup or open anything. Tr. 100-01. Plaintiff stated that she has used a TENS unit on her back up to three times a day to "try to relax the muscles from the spasms" she has in her back. Tr. 101. Plaintiff testified that she did not draw unemployment because when the school year was over she did not return to work. *Id.* Plaintiff stated that she and her husband looked for other work for her but she is "not able to work." Tr. 102. Plaintiff stated that when she was a nursing assistant she had problems trying to bend and one time she was bending over a child to insert a catheter and fell on top of her. *Id.* Plaintiff testified that she also has problems with standing, lifting, and writing because her "hand stays numb." *Id.* Plaintiff stated that problems with her memory and pain "progressed, and got worse . . . ." Tr. 103. Plaintiff testified that she has been in treatment for her mental issues and she "tried to cut [her] wrists." *Id.* Plaintiff testified she has been seeing a psychiatrist for "about a year and a half." *Id.* Plaintiff stated that her medications are helping "a little bit" and she has not tried to hurt herself although she has "thoughts of it." Tr. 104. Plaintiff stated that the medication makes her "very sleepy" and she also has dry mouth and feels nauseated from the medicine and sometimes she gets nauseated from the pain. *Id.*

> 2.   Lay Witness Testimony

Plaintiff's husband, Franklin A. Jones, also testified at the administrative hearing. Tr. 105. Mr. Jones stated that he and Plaintiff had been married almost ten years, and he was employed as a residential garbage truck driver. Tr. 106. In response to questions from Plaintiff's counsel Mr. Jones stated that, although Plaintiff "had back problems forever" the issues related to Plaintiff's conditions seemed to get worse in early 2011. *Id.* Mr. Jones noted that in 2011 she

was absent from work on 23 different occasions. Tr. 107. He stated that Plaintiff would bend over and suddenly her back would go out and he would have to take her to the emergency room to get shots. *Id.* He also testified that Plaintiff "fights this depression real bad" and she has memory problems. *Id.* Mr. Jones testified that he did not believe Plaintiff could work noting that the children did the simple housework, he and the children cooked, and Plaintiff was in a lot of pain and took a lot of medications. Tr. 108. He testified that they "can't even do anything anymore together" and it has also affected them intimately. *Id.*

       3.   Testimony of VE

VE John Wilson also testified at the administrative hearing. Tr. 108. After seeking clarification from Plaintiff regarding some of Plaintiff's former jobs, he described her PRW as follows:

> School bus driver; SVP 4; semi-skilled; the strength is medium; DOT 913.463-010; front desk clerk; SVP 4; semi-skilled; strength is light; DOT 238.367-038; teacher aide; SVP 3; semi-skilled; strength is light; DOT 249.367-074; CNA; SVP 4; semi-skilled; strength is medium; DOT 355.674-014.

Tr. 111. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and vocational background with the following limitations:

> [S]he can perform light work, except that this individual cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance; stoop; kneel; crouch; and crawl. She must avoid concentrated exposure to extreme cold or head. She must avoid concentrated exposure to vibrations. And she must avoid working at unprotected heights.

*Id.* The VE testified that the individual could perform Plaintiff's past work as front desk clerk and teacher's aide both as actually and generally performed. *Id.* The VE stated the hypothetical individual could also perform the following jobs: "Storage facility clerk; SVP 2; unskilled; light; South Carolina, 5,080; national economy, 437,800; DOT 295.367-026; ticket taker; SVP 2; unskilled; light; South Carolina, 1,280; national economy, 108,800; DOT 344.667-010. . . .

Electrical assembler; SVP 2; unskilled; light; South Carolina, 2,130; national economy, 198,300; DOT 729.687-010." Tr. 112. The ALJ noted that because the past work as front desk clerk and teacher's aide are semi-skilled positions if he added the functional limitation of limiting the individual to "simple, routine, repetitive tasks" those jobs would be ruled out. *Id.* The VE confirmed that the other three jobs with SVP of two would still be available in the same numbers. Tr. 112-13. The ALJ proposed another hypothetical in which the individual had "all of the functional limitations from the first and second question, but add that this individual is limited to sedentary work." Tr. 113. The VE identified the following sedentary jobs such an individual could perform:

> Surveillance system monitor; SVP 2; unskilled; sedentary; South Carolina, 550; national economy, 74,470; DOT 379.367-010; weight tester; SVP 2; unskilled; sedentary; South Carolina, 8,000; national economy, 464,300; DOT 539.485-010; food and beverage order clerk; SVP 2; unskilled; sedentary; South Carolina, 1,720; national economy, 213,000; DOT 209.567-014.

*Id.* The ALJ asked if there would be any jobs the individual could perform if the individual "could be expected to be absent three days per month on a consistent basis" and the VE responded that would "eliminate all jobs." *Id.*

Plaintiff's counsel asked the VE how the jobs he listed would be affected if he were to assume "an individual would be off task 20 percent of the time due [to] incidents of pain." Tr. 114. The VE testified that would eliminate all jobs identified and all jobs in the economy. *Id.* The VE responded to counsel that the job of ticket taker generally occurred in the movie theater setting. *Id.* After some discussion regarding the DOT classification for teacher's aide versus substitute teacher, Tr. 114-15, counsel inquired of Plaintiff regarding her duties. Tr. 116. Plaintiff testified that as a substitute teacher she had to be responsible for the students to make sure they did their work, she had to monitor them, take them to different functions, and the job involved a lot of walking. *Id.* Plaintiff stated that in the course of the day there could be some lifting,

including passing out books, setting up a computer, or moving desks. *Id.* When asked about the duties of front desk receptionist Plaintiff stated that "it was a lot of memory, a lot of standing, as well." *Id.* Plaintiff stated she sometimes had to show the room if the guest requested to see it before checking in and she had to monitor the property which involved a lot of walking. Tr. 117. Plaintiff emphasized that she "had to remember things." *Id.* Counsel had no further questions for the VE. *Id.*

II.    Discussion

A.  The ALJ's Findings

In his September 12, 2014 decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2.    The claimant has not engaged in substantial gainful activity since May 15, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine and obesity (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she cannot climb ladders, ropes or scaffolds; she can occasionally climb ramps and stairs; she can occasionally balance, stoop, kneel, crouch and crawl; she must avoid concentrated exposure to extreme heat and cold; she must avoid concentrated exposure to vibrations; and she must avoid working at unprotected heights.

6.    The claimant is capable of performing past relevant work as a front desk clerk and teacher's aide. This work does not require the performance of

work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. 82, 84, and 87.

B.   Legal Framework

1.   The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW; and (5)

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment.

whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he/she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

---

20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

2.   The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . . ." 42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

III.   Analysis

Plaintiff asserts that (1) the ALJ failed to properly assess treating opinion evidence; (2) the ALJ did not explain his findings regarding Plaintiff's residual functional capacity ("RFC") as

required by SSR 96-8p; and (3) the ALJ failed to properly evaluate Plaintiff's credibility. Pl.'s Br. 18-32, ECF No. 15.

### A.  ALJ's Consideration of Opinion Evidence

Plaintiff argues that the ALJ failed to properly assess the November 5, 2013 opinion of Dr. Christopher Merrell and the June 25, 2014 opinion of Dr. Pascale Mardikian. Pl.'s Br. 21-24. The Commissioner disagrees, and asserts that "the ALJ fully considered the medical record." Def.'s Br. 5, ECF No. 17.

If a treating source's medical opinion is "well-supported and 'not inconsistent' with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). The Commissioner typically accords greater weight to the opinion of a claimant's treating medical sources because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005); 20 C.F.R. §§ 404.1527(c), 416.927(c). The

rationale for the general rule affording opinions of treating physicians greater weight is "because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Johnson*, 434 F.3d at 654 (quoting *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)). The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro*, 270 F.3d at 176. SSR 96-2p requires that an unfavorable decision contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. In undertaking review of the ALJ's treatment of a claimant's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence.

### 1. Dr. Christopher Merrell

On November 5, 2013, Plaintiff returned for an office visit at Lowcountry Orthopaedics and was seen by Dr. Merrell for issues regarding chronic lower back pain and neck pain. Tr. 726. Dr. Merrell noted the following information in his Clinical Assessment/Plan:

> [Plaintiff] has chronic LBP with right radicular symptoms, chronic neck pain with right radicular symptoms. MRI c-spine showed small central disc protrusion without central stenosis C5/6. MRI l/s spine showed central and foraminal stenosis at multiple levels with multilevel DDD, incidental T11/12 disc protrusion as well. Cont[inue] voltaren, PT. Cont[inue] Lyrica, inc[rease] to 150mg bid. Norco 10mg q6h prn. s/p right L5S1 TFESI without relief. Preauth for L3/4 translaminar ESI for therapeutic purposes. s/p C6/7 CESI wit If no better, could consider spine surg c/s vs SCS trial. She has spoken with SSI in the past as well, could consider 2nd opinion. Her returning to work at this point is not probable or medically reasonable given pain level.

*Id.*

Plaintiff contends that the ALJ did not discuss this opinion of her treating pain specialist and therefore her case should be remanded. Pl.'s Br. 22. The Commissioner argues that "[w]hile

the ALJ did not mention Dr. Merrell's assessed limitations, as found by the ALJ, the ALJ referenced Dr. Merrell's statement that Plaintiff underwent physical therapy and chiropractic care with some relief (Tr. 86)." Def.'s Br. 8. The Commissioner contends that "Dr. Merrell did not document any physical examination findings" and his opinion was based on Plaintiff's subjective report. *Id.*

In his decision the ALJ referenced the treatment note of Dr. Merrell when considering the objective evidence related to Plaintiff's symptoms and pain but did not consider the treatment note when discussing the opinion evidence. Tr. 86. The undersigned disagrees with the Commissioner's contention that Dr. Merrell did not document any physical examination findings, as the remaining pages of the treatment note show that Dr. Merrell completed a physical examination of Plaintiff—including a lumbar spine evaluation that noted Plaintiff had an antalgic gait and her lumbar motion was "with pain." Tr. 727.

A medical opinion is a statement from a physician, psychologist, or other acceptable medical source that "reflects judgments about the nature and severity" of the claimant's impairments, including "symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." SSR 96-5p, 1996 WL 374183, at *2.

Dr. Merrell diagnosed Plaintiff with chronic lower back pain and chronic neck pain with right radicular symptoms. Tr. 726. The ALJ found Plaintiff had the severe impairment of degenerative disc disease of the cervical and lumbar spine. Tr. 82. Therefore, any failure of the ALJ with regard to weighing Dr. Merrell's opinion related to his diagnosis of Plaintiff's condition could be considered harmless error, as the ALJ reached the same conclusion as Dr. Merrell.

Dr. Merrell opined that Plaintiff's "returning to work at this point is not probable or medically reasonable given pain level." Tr. 726. Dr. Merrell's opinion regarding Plaintiff's

inability to return to work is an administrative determination reserved for the Commissioner and is not a medical opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (noting certain opinions by medical sources—such as being "disabled" or "unable to work"—are not afforded "special significance"). In his decision the ALJ noted that in April 2013 Plaintiff denied back pain and ambulated without difficulty, an August 2013 MRI showed only mild degenerative changes to Plaintiff's cervical spine, and Dr. Merrell's finding that Plaintiff received some relief from physical therapy and chiropractic care. Tr. 86. However, the ALJ did not discuss Plaintiff's pain levels at the point in time when Dr. Merrell offered his opinion. The regulations require that ALJs "always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner" and "evaluate every medical opinion" they receive. SSR 96-5p, 1996 WL 374183, at *3. The undersigned recommends a finding that the ALJ erred in failing to weigh Dr. Merrell's opinion regarding Plaintiff's pain and the error was not harmless. "In any instance, an ALJ's failure to explain the weight given to a treating physician opinion is ground for remand because, without sufficient explanation, the reviewing court cannot determine whether substantial evidence supports the ALJ's decision." *Green v. Colvin*, No. 8:12-CV-2241 DCN, 2014 WL 793067, at *11 (D.S.C. Feb. 24, 2014) (citing *Koonce v. Apfel,* 1999 WL 7864, at *2 (4th Cir. Jan. 11, 1999); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983)).

### 2.  Dr. Pascale Mardikian

Plaintiff was seen by Dr. Mardikian on August 19, 2013, complaining of depression. Tr. 713. Plaintiff reported feeling depressed since she was 20 years old but that "her mood has been worse since she had to stop her job, for the past year she feels that things got worse." *Id.* Dr. Mardikian prescribed gabapentin 300mg for pain and anxiety and trazodone 50 mg for sleep. Tr. 716. He continued Plaintiff on Zoloft 100mg and added Deplin for depression. Plaintiff returned

to Dr. Mardikian on September 11, 2013, and presented as "very discouraged." Tr. 717. Plaintiff reported that the trazadone did not help with sleep, she did not notice any difference in her pain since initiating gabapentin, her pain levels had increased, and her mood was the same despite the addition of Deplin. In his mental status exam Dr. Mardikian noted that Plaintiff's "mood was very depressed. [Her] affect was restricted in range." *Id.* He also noted that her "thought process was goal directed and though contents were future oriented [and her] insight and judgment was intact." *Id.* Dr. Mardikian stopped the trazadone, Deplin, and Neurontin and started Plaintiff on Ambien 10mg, Zoloft 150mg, and Abilify 2mg. Tr. 718. Plaintiff returned on October 9, 2013 stating that although she was sleeping better since starting the Ambien "her mood has not been better." Tr. 719. Plaintiff reported feeling depressed, frustrated, and that her pain bothered her "a lot." *Id.* Dr. Mardikian's mental status exam was the same as his notation from the previous month. Dr. Mardikian stopped the Abilify and started Plaintiff on Wellbutrin SR 100mg. Tr. 720.

On June 25, 2014, Dr. Mardikian wrote the following on a prescription pad: "to whom it may concern: [Plaintiff] suffers from severe depression and mood unstability (sic). She has been seeing (sic) since August 2013 in this office. Patient's mood has been very difficult to control. Given the severity of her symptoms patient will unlikely be able to return to work in the near future." Tr. 750.

Dr. Mardikian saw Plaintiff again on August 6, 2014, and Plaintiff reported that getting back on Zoloft helped "at first but lately things have been worse with more mood swings/agitation/depression/irritability." Tr. 766. Plaintiff reported no side effects however she "noticed having memory problems." *Id.* In his mental status exam notes Dr. Mardikian noted that Plaintiff's mood was better and her affect was within normal limits. Tr. 765. Plaintiff returned on October 15, 2014, and the mental status notes and assessment were the same as the August 2014 notes. Tr. 763-64.

16

The ALJ considered Dr. Mardikian's June 25, 2014 opinion and gave it "little weight," stating that it was "quite conclusory, providing little explanation of the evidence relied on in forming that opinion." Tr. 86. The ALJ also found that the "opinion is without substantial support from the other evidence of record, which renders it less persuasive. Additionally, Dr. [Mardikian's] opinion is inconsistent with the opinion of Douglas Ritz, Ph.D."[4] *Id.*

Plaintiff asserts that "the ALJ failed to consider the chronology of her worsening depression" noting that Dr. Ritz's evaluation was done before she sought treatment for worsening depression based on the lack of improvement of her physical condition. Pl.'s Br. 23. Plaintiff also contends the ALJ failed to discuss any of Dr. Mardikian's treatment records that he may have used to form his opinion. *Id.* The Commissioner contends that, based on his consideration of the evidence, the ALJ was correct in determining that Dr. Mardikian's opinion was entitled to little weight. Def.'s Br. 9.

The responsibility for weighing evidence falls on the Commissioner, not the reviewing court. *See Craig v. Chater*, 76 F.3d at 589. The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d at 176. SSR 96-2p requires that an unfavorable decision contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. As required by SSR 96-2p, the ALJ's decision contained specific reasons for the weight given to Dr. Mardikian's opinion—it was conclusory, provided little explanation, was without substantial support from the other record evidence, and was inconsistent with Dr. Ritz's opinion. The court

---

[4] On March 22, 2013, Dr. Ritz conducted a Mental Status Examination of Plaintiff. Tr. 625-27. Based on his evaluation Dr. Ritz concluded Plaintiff had a "mild level of depression that would not intrude in her ability to perform in a work-related setting." Tr. 627.

is not to weigh evidence or substitute its judgment for that of the Commissioner, but is to determine whether the ALJ's weighing of the evidence is supported by substantial evidence in the record. *See generally Hays v. Sullivan*, 907 F.2d at 1456 (noting judicial review limited to determining whether findings supported by substantial evidence and whether correct law was applied). As the ALJ articulated sufficient reasons for assigning less weight to the opinion of Dr. Mardikian and because Dr. Mardikian's opinion that Plaintiff would "unlikely be able to return to work in the near future" is an issue reserved for the Commissioner, the undersigned recommends that this challenge to the ALJ decision be dismissed.

B.  The ALJ's RFC Assessment

Residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Plaintiff is responsible for providing the evidence to be used in making a finding about her RFC. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). This includes evidence of any factors showing how her impairment affects her ability to work. 20 C.F.R. §§ 404.1512(c), 416.912(c). "[A] condition that does not result in any functional impairment is not relevant to the RFC analysis." *Wimberly v. Barnhart*, 128 Fed. App'x 861, 863 (3d Cir. 2005).

Here, after "careful consideration of the entire record" the ALJ determined Plaintiff had the RFC to perform "light work" as defined in the regulations with additional limitations. Tr. 84. The ALJ restricted Plaintiff from climbing ladders, ropes or scaffolds; limited her to occasional climbing of ramps and stairs; and noted she could occasionally balance, stoop, kneel, crouch, and crawl. *Id.* The ALJ further noted that Plaintiff "must avoid concentrated exposure to extreme heat and cold; she must avoid concentrated exposure to vibrations; and she must avoid working at unprotected heights." *Id.*

Plaintiff contends the "ALJ did not meet the minimal requirements of Ruling 96-8p to explain the RFC assessment he made, and explain his consideration of the medical evidence and other evidence relevant to that determination." Pl.'s Br. 26. Plaintiff asserts the "ALJ omitted several records that support a finding that she was disabled." *Id.* The Commissioner argues the ALJ fully considered the medical record; however, he "is not required to evaluate every piece of evidence." Def.'s Br. 5. The Commissioner also notes that the records Plaintiff claims the ALJ did not reference included a 2009 MRI that pre-dated Plaintiff's alleged onset date of May 2011, and records related to a prescription for a back brace and walker and a recommendation for surgical intervention that were not proffered to the ALJ but were instead sent to the Appeals Council after the ALJ's decision. *Id.* at 6, n.2.

SSR 96–8p provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

1996 WL 374184, at *7.

It is widely held that ALJs are not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to realize that all relevant evidence was considered, though not written about, in reaching the ultimate decision. *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) ("[T]he ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it."); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record

fully and fairly, an ALJ is not required to discuss every piece of evidence submitted."); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (finding that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection" insufficient to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole).

Plaintiff argues that the ALJ "omits records that document marked tenderness to the lumbar muscles, persistent difficulties with flexion, an antalgic gait, and a positive straight leg test." Pl.'s Br. 26. The Commissioner points out that the ALJ noted physical examinations that referenced issues related to Plaintiff's back. Def.'s Br. 6. A review of the ALJ's decision shows that the ALJ discussed the record evidence related to Plaintiff's degenerative disc disease noting that "the record shows that the claimant has a history of reported back and neck pain." Tr. 85. The ALJ did not, as Plaintiff suggests, focus solely on records that supported a finding that she was not disabled. For example, the ALJ noted that in an April 2011 visit to the emergency department Plaintiff "described right lower lumbar spine pain" and she had "moderate soft tissue tenderness in the right lower lumbar area and limited range of motion in the back." *Id.* The ALJ also noted a December 2011 exam that reflected "moderate tenderness in the right buttock with some muscle spasm. She had decreased forward flexion, lateral bending and rotation." Tr. 85-86. The ALJ referenced an October 2012 emergency department report that found Plaintiff had "some paraspinous tenderness in the neck associated muscle spasm that was exacerbated by neck movements. The radiological study of the cervical spine showed minor spondylosis." Tr. 86. The ALJ noted Plaintiff returned to the emergency department in November 2012 complaining of chronic back pain and the "objective findings revealed mild soft tissue tenderness in the right upper lumbar area." *Id.* After discussing the objective medical evidence the ALJ discussed the opinion evidence and concluded:

> In sum, the above [RFC] assessment is supported by the weight of the evidence of record. There are no medical findings of sufficient severity to suggest that the claimant is unable to perform all work activity. There are positive findings that somewhat support the claimant's subjective symptoms and reported limitations. The claimant's medical record is positive for cervical and lumbar degenerative disc disease and obesity.

Tr. 87. The ALJ considered evidence that supported Plaintiff's complaints but determined, based on other medical evidence, that Plaintiff is capable of performing a limited range of light work. While the ALJ followed SSR 96-8p and adequately discussed the evidence, because the undersigned found that the ALJ did not properly consider the November 2013 opinion of Dr. Merrell, the undersigned is unable to determine if the RFC assessment is supported by substantial evidence.

### C.  Plaintiff's Credibility

In Plaintiff's final allegation of error she asserts the ALJ failed to properly evaluate her credibility. Pl.'s Br. 29. Plaintiff "submits that the credibility analysis is lacking a proper analysis of her statements about the intensity, persistence, and limiting effects of symptoms." *Id.* at 32. The Commissioner contends that "the ALJ considered all of the evidence, including the objective clinical signs and laboratory findings, medications, physical functional limitations made by the state agency physicians, treating physicians, consultative examiner, and Plaintiff's testimony, before concluding that Plaintiff's assertions concerning her impairments and their impact on her condition were not fully credible (Tr. 84-87)." Def.'s Br. 10.

SSR 96-7p[5] requires that, prior to considering Plaintiff's subjective complaints the ALJ must find there is an underlying impairment that has been established by objective medical

---

[5] Earlier this year the Social Security Administration published SSR 16-3p, 2016 WL 1119029 (2016), which supersedes SSR 96-7p, eliminates use of the term "credibility," and clarifies that subjective symptom evaluation is not an examination of an individual's character. Because the ALJ decided this case prior to March 16, 2016, the effective date of SSR 16-3p, the court analyzes the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of

evidence that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Only then is the ALJ to move to the second step: consideration of the record as a whole, including both objective and subjective evidence, to assess Plaintiff's credibility regarding the severity of his subjective complaints, including pain. *See* SSR 96-7p, 1996 WL 374186, at *2; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b); *Craig v. Chater,* 76 F.3d at 591-96. The requirement of considering a claimant's subjective complaints does not mean the Commissioner must accept those complaints on their face. The ALJ may consider the claimant's credibility in light of his testimony and the record as a whole. If the ALJ rejects a claimant's testimony about his pain or physical condition, the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.,* 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker,* 719 F.2d 723, 725 n.2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." 1996 WL 374186, at *4.

The Ruling further requires "[a]ssessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record." 1996 WL 374186, at *5. This evidence includes statements "about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's

---

the claimant's credibility. Although SSR 16-3p eliminates the assessment of credibility, it requires assessment of most of the same factors to be considered under SSR 96-7p.

ability to work." *Id.* SSR 96-7p provides further guidance on how to evaluate a claimant's credibility, indicating that "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." *Id.*

The ALJ considered Plaintiff's credibility by using the two-step process outlined above and considering the medical and non-medical record. The ALJ considered Plaintiff's impairments, both severe and non-severe, and in combination. Tr. 82-84. In evaluating her mental impairment of depression the ALJ discussed Plaintiff's activities of daily living and her social and mental functioning. Tr. 83. The ALJ also considered the testimony of Plaintiff and her husband from the administrative hearing. Tr. 85. The ALJ specifically found "[a]fter careful consideration of the evidence," that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 85. The ALJ then considered the record medical evidence. Tr. 85-87. The ALJ determined the following:

> While the medical evidence of record establishes the existence of the above-mentioned impairments, the objective findings do not confirm that these impairments are of such severity that they could reasonably be expected to produce the degree of debilitating pain and functional limitations alleged. Considering the claimant's medical evidence in its entirety and her testimony, the undersigned concluded that the claimant's testimony is not fully credible and she retains the above residual functional capacity assessment.

Tr. 87.

When considering whether an ALJ's credibility determinations are supported by substantial evidence, a district court does not replace its own credibility assessments for those of the ALJ, but, rather, the court scrutinizes the evidence to determine if it is sufficient to support the ALJ's conclusions. In reviewing the record for substantial evidence, the court does not re-weigh conflicting evidence, reach independent determinations as to credibility, or substitute its

own judgment for that of the Commissioner. *Hays,* 907 F.2d at 1456. Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir. 1984). The undersigned has considered Plaintiff's challenges and has reviewed the record. Based on this review and applicable law, the undersigned finds that the ALJ's decision reflects that he considered the relevant factors in weighing Plaintiff's credibility.

IV.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

December 29, 2016                                    Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**